UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| C.S., a minor, by and through<br>Next Friend, Jessica Shatto,<br><br>*Plaintiff*,<br><br>vs.<br><br>SAINT LOUIS PUBLIC SCHOOLS,<br><br>And<br><br>SHEILA L. SHERMAN,<br><br>*Defendants*. | Cause No. ____________________<br><br><br><br><br><br>JURY TRIAL DEMAND |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW Plaintiff, C.S., a minor, by and through Next Friend, Jessica Shatto, and for his causes of action against Defendants, Saint Louis Public Schools and Sheila Sherman, states the following facts upon his personal knowledge and information:

Parties

1. C.S. is, and at all times relevant to this Petition was, a minor resident of the City of St. Louis, State of Missouri, and an enrolled student in the St. Louis Public Schools.

2. Jessica Shatto, the mother of C.S. and his Next Friend in this action, is and at all times relevant to this Petition was an adult resident of the City of St. Louis, State of Missouri.

3. Defendant St. Louis Public Schools ("the District") is a public school district located within the City of St. Louis, State of Missouri.

4. The District receives federal financial assistance.

5. The District is a political subdivision of the State, a public corporation, and a "person" by statute.

6. Defendant Sheila L. Sherman, Ph.D., is the District's Network Superintendent, Innovative Programs. Defendant Sherman is sued in her Individual Capacity.

7. At all times mentioned in this Complaint, Defendant Sherman was acting within the course and scope of her employment and under color of state law.

Jurisdiction and Venue

8. This Complaint arises under the laws of the United States—to wit, § 1983 of Title 42 of the U.S. Code; the First and Fourteenth Amendments to the Constitution; and Title IX of the Education Amendments of 1972 ("Title IX").

9. Defendants are subject to this District Court's personal jurisdiction with respect to this civil action.

10. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

General Allegations

11. The Supreme Court of the United States has established that public schools may not regulate student speech unless such speech:

a. materially disrupts classwork or involves substantial disorder or invasion of the rights of others;

b. is offensively lewd and indecent and spoken in a school assembly or classroom;

c. is sponsored by the school and bears the school's imprimatur; or

d. can be reasonably interpreted to encourage illicit drug use.

12. The Supreme Court has stated that that the "leeway" which public schools get to regulate student speech "is diminished" in cases of off-campus speech.

13. The Supreme Court has advised that courts must be skeptical of a public school's regulation of off-campus student speech because:

a. a school, in relation to off-campus speech, will rarely stand *in loco parentis*;

b. from the student speaker's perspective, regulations of off-campus speech, when coupled with regulations of on-campus speech, include all the speech a student utters during the full 24-hour day; and

c. the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus, as popular ideas have less need for protection.

14. The Supreme Court has held that students facing out-of-school suspension are entitled to Due Process, which even in suspensions of fewer than ten days requires an opportunity for the student to be heard. Goss v. Lopez, 419 U.S. 565 (1975). It is axiomatic that "[a] fundamental requirement of due process is the opportunity to be heard, 'at a meaningful time and ***in a meaningful manner***'." Valter v. Orchard Farm Sch. Dist., 541 S.W.2d 550, 557 (Mo. 1976) (quoting Ahern v. Board of Educ. of Sch. Dist. of Grand Island, 456 F.2d 399, 403 (8th Cir. 1972) (emphasis added)).

15. Where a school district receives federal financial assistance, the district's treatment of a student accused in a complaint of sexual harassment "may constitute discrimination on the basis of sex under title IX." 34 C.F.R. § 106.45(a).

Facts Applicable to All Counts

16. C.S. is, and at the beginning of the 2026-27 school year was, a senior at Metro Academic and Classical High School ("Metro"), which is owned and operated by the District.

17. At the beginning of the 2026-27 school year, C.S. was enrolled in several advanced, college-preparatory classes—to wit, AP Statistics, IB Global Politics, IB Physics 2, and IB World Literature.

18. On or about September 9, 2026, while at home, outside school hours, C.S. downloaded the Snapchat app and added some girls so that they could exchange messages.

19. C.S. sent a message to a female student ("Jane Doe") at Metro, the entire text of which was: "Trade?"

20. Immediately regretting his action, C.S. blocked Jane Doe, closed his account, and deleted the app.

21. C.S. sent no other messages to Jane Doe.

22. No images or videos were sent or received in either direction.

23. C.S.'s message was reported to Metro administrators.

24. Although inappropriate, the message was not a true threat, was not spoken in a school assembly or classroom, could not be reasonably interpreted to encourage illicit drug use, and was not sponsored by the school and did not bear the school's imprimatur.

25. The message caused no disruption in the operations of the District's schools.

26. On or about September 10, 2026, Joseph Cooper, Metro's Assistant Principal, informed the parents of C.S. that C.S. was "suspended out of school for a minimum of 10 school days, beginning Friday September 11, 2026 for **HARASSMENT, BULLYING, VIOLENCE, SEXUAL OR OTHER SERIOUS MISCONDUCT.**"

27. Mr. Cooper's letter further described C.S.'s misconduct as, "Repeated or flagrant serious acts of harassment against another person. Serious harassment includes but is not limited to sexual, verbal, physical, emotional or electronic intimidation."

28. C.S.'s conduct was neither repeated nor a "flagrant serious act[] of harassment."

29. Mr. Cooper's letter indicated that the matter was being referred to the District's Office of Student Support Service and that the student and his family would be required to attend a disciplinary conference.

30. The disciplinary conference was held on September 15, 2026, and was run by Terry Houston, E.d.D., the District's Director of Student Outreach.

31. Defendant Sherman also attended and played a significant role at the conference.

32. At the outset of the conference, Director Houston explained to C.S.'s parents that he had already decided C.S.'s suspension and alternative placement.

33. Thus, the outcome of the disciplinary conference was predetermined, and Plaintiff had no meaningful opportunity to be heard.

34. Before the meeting started, Defendant Houston prepared a letter to C.S.'s parents, stating, "effective September 28, 2026, Cameron Shatto will be reassigned to Virtual Learning Academy" ("VLA").

35. When C.S.'s parents inquired about appealing the suspension and alternative placement, Defendant Sherman remarked that, because C.S. admitted to sending the one-word message, there was nothing to appeal.

36. During the conference, C.S.'s misconduct was described as Type I "sexual harassment."

37. In the District's Code of Conduct, "sexual harassment" is explained as follows:

> Under Title IX, the definition of sexual harassment includes conduct on the basis of sex within the scope of the District's education programs or activities that meets one or more of the following:
>
> • A District employee conditioning an aid, benefit, or service of an education program or activity on an individual's participation in unwelcome sexual conduct;
>
> • Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person's equal access to the District's education program or activity; or
>
> • "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)(A)(v), "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

38. The Code of Conduct does not bifurcate Title IX sexual harassment and non-Title IX sexual harassment.

39. Thus, the District is bound by the procedural protections required by Title IX as it suspends C.S. for "sexual harassment," including those provided at 34 C.F.R. §§ 106.44 and 106.45 ("the Title IX Procedures").

40. C.S.'s conduct was not "so severe, pervasive, and objectively offensive that it effectively denies a person's equal access to the District's education program or activity."

41. C.S.'s conduct did not meet any of the Title IX definitions of "sexual harassment" as set out in the Code of Conduct.

42. The District has a "Bullying and Harassment Reporting and Investigation Regulation," which applies to complaints of sexual harassment.

43. The Regulation sets out a process of investigation and includes a form to be completed by an investigator.

44. In C.S.'s case, there is no evidence that District followed its Regulation and completed the form.

45. The Code of Conduct lays out a process for appealing assignment to an alternative site due to a Type I infraction of the Student Code.

46. Under the appeal process, parents "have five (5) business days from the start date of alternative placement to file with The Office of Student and Parent Concerns."

47. C.S. was assigned to VLA "effective September 28, 2026," although he was not even registered for his classes by that date.

48. On September 25, 2026, C.S.'s mother wrote to District officials, including Defendant Sherman; Director Houston; Mr. Cooper; and Isaac Pollack, a Network Superintendent for the District, among others: "At this point, I would like to formally appeal Cameron's full semester suspension. I would like to begin this as soon as possible. Please send all relevant information on how the process works and what steps need to be taken."

49. On September 28, 2026, Ms. Sherman replied to Ms. Shatto: "As stated in SLPS Student Code of Conduct, requests for appeal must be made within 5 business days from the start date of the alternative placement. Cameron's start date in the alternative placement is the date that determination was made which was September 15, 2026."

50. The District does not indicate anywhere, either in its Code of Conduct or in any other format, that the "start date of the alternative placement" is actually "the date that determination was made"; and such an interpretation of that phrase is unreasonable.

51. Rather, any reasonable parent would interpret the "start date of the alternative placement" to mean the start date of the alternative placement—which, in C.S.'s case, would be September 28, 2026, at the earliest.

52. Thus, under the text of the District's Code of Conduct, the earliest deadline for appealing C.S.'s alternative placement would be October 3, 2026.

53. The clear text of the District's own policies aside, Defendant Sherman indicated to Ms. Shatto that no appeal could be had.

54. Defendant Sherman also told Ms. Shatto, "our virtual platform can accommodate Cameron's IB and AP courses. He will start the courses as he would have on the 1st day."

55. Beginning on September 21, 2026, and continuing through the filing of this Complaint, Ms. Shatto has asked District officials for specifics regarding C.S.'s education through VLA, including but not limited to his ability to continue in AP and IB classes.

56. As of the filing of this Complaint, VLA is not offering the AP and IB courses that C.S. was taking at the time the District suspended him.

57. In fact, as of the filing of this Complaint, the District has utterly failed to facilitate any education of C.S. through VLA.

58. Without immediate injunctive relief, C.S. will irreparably fall behind in his academics, including in his AP and IB classes, affecting his education in the presence and into the future.

59. The injunctive relief requested will not occasion any damages to Defendant; thus, no bond is necessary.

<u>Exhaustion of Administrative Remedies</u>

60. As stated above, C.S.'s parents attempted to assert their right to appeal the District's decisions; but Defendant Sherman has refused to allow any appeal to occur.

<u>Action under § 1983 of Title 42 of the U.S. Code</u>
<u>Violation of the First Amendment vs. The District</u>

61. Plaintiff incorporates the averments made above as if they were fully set forth herein.

62. The message for which Plaintiff is being punished was not a true threat;

a. did not materially disrupt classwork or involve substantial disorder or invasion of the rights of others;

b. was not offensively lewd and indecent, nor spoken in a school assembly or classroom;

c. was not sponsored by the school and did not bear the school's imprimatur; and

d. cannot be reasonably interpreted to encourage illicit drug use.

63. Defendant acted under color of state law when its administration suspended C.S. and sanctioned with an alternative placement because of the one-word message sent outside of school, off school grounds, which had no, or *de minimis*, disruptive effect at the school.

64. The conduct to which Defendants subjected C.S. deprived him of the right to the freedom of speech under the First Amendment to the United States Constitution.

65. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as described above and will be immediately and irreparably harmed as described above and in his Affidavit.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor on Count I and award the following relief:

A. A judgment declaring that the Defendants violated Plaintiff's First Amendment rights; and

B. A preliminary injunction under Federal Rule 65(a), directing Defendants to lift their suspension of C.S. and return him to Metro; and

C. A permanent injunction following a full hearing, directing Defendant to lift their suspension of C.S. and return him to Metro;

D. An award of nominal and compensatory damages for Plaintiff's losses incurred;

E. An award of reasonable attorney fees and costs to Plaintiff; and

F. Any additional relief that the Court deems appropriate.

Count II
Action under § 1983 of Title 42 of the U.S. Code
Violation of the Due Process Clauses of the Constitution vs. All Defendants

66. Plaintiff incorporates the averments made above as if they were fully set forth herein.

67. Defendants acted under color of state law when they violated C.S.'s rights to due process in the following ways:

(a). predetermining the outcome of the September 15, 2026, disciplinary conference;

(b). informing C.S.'s parents that no appeal was possible because C.S. admitted to sending the message;

(c). failing to follow its own policies regarding discipline of sexual harassment as described in the Code of Conduct and in the Bullying and Harassment Reporting and Investigation Regulation; and

(d). refusing to allow an appeal of the alternative placement by applying a nonsensical interpretation of the time for appeal.

68. C.S. has been deprived, and is continuously being deprived, of his right to public education without due process of law.

69. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as described above and will be immediately and irreparably harmed as described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor on Count II and award the following relief:

A. A judgment declaring that the Defendants violated Plaintiff's Due Process rights in one or more of the way specified above; and

B. A preliminary injunction under Federal Rule 65(a), directing Defendants to lift their suspension of C.S. and return him to Metro; and

C. A permanent injunction following a full hearing, directing Defendants to lift their suspension of C.S. and return him to Metro;

D. An award of nominal and compensatory damages for Plaintiff's losses incurred;

E. An award of reasonable attorney fees and costs to Plaintiff; and

F. Any additional relief that the Court deems appropriate.

## Count III
## Violation of Title IX vs. The District

70. Plaintiff incorporates the averments made above as if they were fully set forth herein.

71. The District is a recipient of federal financial assistance.

72. The District has punished and is punishing C.S. for an alleged violation of Title IX.

73. The District has failed and refused to follow the Title IX Regulations as described above.

74. The District's treatment of C.S. in this matter constitutes discrimination on the basis of sex under Title IX

75. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages as described above and will be immediately and irreparably harmed as described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor on Count III and award the following relief:

A. A judgment declaring that the Defendants violated Plaintiff's Due Process rights in one or more of the ways specified above;

B. A preliminary injunction under Federal Rule 65(a), directing Defendants to lift their suspension of C.S. and return him to Metro;

C. A permanent injunction following a full hearing, directing Defendants to lift their suspension of C.S. and return him to Metro;

D. An award of nominal and compensatory damages for Plaintiff's losses incurred;

E. An award of reasonable attorney fees and costs to Plaintiff; and

F. Any additional relief that the Court deems appropriate.

RESPECTFULLY SUBMITTED

__________________________
Daniel J. Rhoads, 59590
**THE RHOADS FIRM, LLC**
8123 Delmar Blvd., Suite 200
St. Louis, MO 63130
Phone: (855) 895-0997
Fax: (314) 754-9103
therhoadsfirmllc@gmail.com

*Attorney for Plaintiff*
*C.S., a minor, by and through*
*Next Friend, Jessica Shatto*